1  Steve W. Berman (*Pro Hac Vice* Forthcoming)
   *steve@hbsslaw.com*
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Second Avenue, Suite 2000
3  Seattle, WA 98101
   T: (206) 623-7292
4  F: (206) 623-0594

5  Christopher R. Pitoun (SBN 290235)
   *christopherp@hbsslaw.com*
6  HAGENS BERMAN SOBOL SHAPIRO LLP
   301 North Lake Avenue, Suite 203
7  Pasadena, CA 91101
   T: (213) 330-7150
8  F: (213) 330-7152

9  [Additional Counsel listed on signature page]

10 *Attorneys for Joseph Pinzon, individually and on*
   *behalf of all others similarly situated*

11

12            **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14                **WESTERN DIVISION**

15 | JOSEPH PINZON, individually and on behalf of all others similarly situated, | Case No.  2:20-cv-4928 |
16 | | CLASS ACTION |
   |                                     Plaintiff, | |
17 | | |
   |            v. | |
18 | | |
   | PEPPERDINE UNIVERSITY, | |
19 | | |
   |                                     Defendant. | |
20

21

22

23

24

25

26

27

28

COMPLAINT

010920-27/1295584 V1

# TABLE OF CONTENTS

**Page**

I.   NATURE OF ACTION ............................................................................. 1

II.   JURISDICTION AND VENUE ............................................................... 2

III.   PARTIES ................................................................................................ 3

IV.   FACTS .................................................................................................... 4

A.   Background ............................................................................................. 4

B.   The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................................................................................................... 7

C.   Defendant's Refusal To Issue Tuition, Fee, And/Or Room And Board Refunds ...................................................................................... 10

V.   CLASS ACTION ALLEGATIONS ..................................................... 10

VI.   CAUSES OF ACTION ......................................................................... 14

   COUNT I  BREACH OF CONTRACT .............................................. 14

   COUNT II  UNJUST ENRICHMENT ............................................... 14

   COUNT III  CONVERSION .............................................................. 15

   COUNT IV  CAL. BUS. & PROF. CODE § 17200 ........................... 16

PRAYER FOR RELIEF .................................................................................. 17

JURY DEMAND ............................................................................................ 18

Plaintiff, JOSEPH PINZON, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant PEPPERDINE UNIVERSITY ("Pepperdine"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.    NATURE OF ACTION

1.    This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.    Despite sending students home and closing its campus(es), Defendant continues to charge for tuition, fees, and/or room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

3.    While some colleges and universities have promised appropriate and/or

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

- 1 -

proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4. As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Texas, whereas Defendant is a citizen of California for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that less than two-thirds of all of the members of the proposed Class in the aggregate are citizens of California, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6. Venue is appropriate in this District because Defendant is located within

- 2 -

the Central District of California. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.   PARTIES

7.     Plaintiff Joseph Pinzon is a citizen and resident of the State of Texas. Plaintiff is the parent of a current Pepperdine graduate student and paid his son's tuition and fees for the Spring 2020 and Summer 2020 academic term at Defendant.

8.     Plaintiff and Plaintiff's son are in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term.

9.     Plaintiff paid Defendant for opportunities and services that his son did not receive, including on-campus education, facilities, services, and activities.

10.     With Pepperdine's campus closure and transition to an online-only educational experience, Plaintiff's son suffered a decreased quality of experience, education, and lost access to important university facilities and experiences that were bargained for by selecting in-person experiences.

11.     For example, Plaintiff's son lost use of vital library access and special tools and resources available only physically in the library, which Defendant cannot and/or has been unable to make available to students online.

12.     And with the transition to online-only classes, Plaintiff's son noticed a shift in and loss of academic rigor.

13.     While Plaintiff paid Pepperdine for an in-class experience that would enable his son to communicate directly with his professors, attend office hours, and provide access to resources unique to his in-person program, such experiences are non-existent following Defendant's campus closure. Such a transition has also made it difficult to connect with professors and staff, a critical component to the bargained-for experience.

- 3 -

14.     As a result, while Plaintiff and other students pay for in-person access to faculty mentorship as an important component of the Pepperdine experience, Defendant excluded students from such access for the Spring 2020 term.

15.     Defendant Pepperdine is an institution of higher learning located in Malibu, California. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.    FACTS

### A.    Background

16.     Founded in 1937, Pepperdine has a current enrollment of approximately 8,824 undergraduate and graduate students, across five schools and colleges.

17.     As of June 30, 2019, Defendant's endowment totaled approximately $887.46 million and the university ended the fiscal year with assets totaling more than $1.962 billion. Defendant collected $264.363 million in student tuition and fees (net of $121.268 million in student aid)—a $14.8 million increase from the year before.

18.     In 2015, Defendant announced the results of its largest ever fundraising campaign—Campaign for Pepperdine: Changing Lives—raising over $470 million from nearly 50,000 donors.[2] The campaign donations raised $141 million in scholarship funds and aid to students, $140 million in new faculty and academic initiatives, and $114 million in campus improvements on key facilities.

19.     In 2017, Defendant raised $562,049 in just 37 hours for the inaugural Give2Pepp campaign.[3] The annual 37-hour campaign raised hundreds of thousands of dollars for Defendant over the last four years.

20.     While many schools nationwide offer and highlight remote learning

---

[2] https://www.pepperdine.edu/newsroom/2015/01/pepperdine-raises-over-470-million-through-changing-lives-campaign/.

[3] https://www.pepperdine.edu/newsroom/2017/03/pepperdine-raises-more-500000-first-ever-giving-day/.

capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

21.    Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

22.    A few examples of such efforts to promote that experience follow. Pepperdine promotes its Malibu campus as developing "the next generation of leaders through rigorous academics, faculty mentorship, and a robust campus life."[4] Pepperdine highlights "small classes, a nurturing campus environment, opportunities for diverse social interaction, and individual attention from these teacher-mentors" in the administration, faculty, and staff.[5]

23.    Pepperdine's graduate programs are "recognized as among the best in higher education" and boast distinguished faculty that is "committed to the challenge of nurturing the intellectual growth of students through meaningful scholarship."[6]

24.    Pepperdine describes its campus as "[n]estled in the rolling foothills of the Santa Monica Mountains, Pepperdine University's Malibu campus commands a majestic view of the Pacific Ocean. The winding seashore, the rugged beauty of Malibu Canyon, and the clean ocean air enhance the towering campus location."[7]

25.    Pepperdine also promotes its on-campus recreation facilities and "moderate seaside climate" for "year-round outdoor activities," noting "students have access to nearby beaches with opportunities for surfing, fishing, and boating."[8]

26.    Pepperdine recognizes its campus life as integral to student learning

---

[4] https://seaver.pepperdine.edu/about/.
[5] https://seaver.pepperdine.edu/about/our-story/seaver-mission/.
[6] https://www.pepperdine.edu/academics/programs/graduate/.
[7] https://www.pepperdine.edu/about/locations/malibu/.
[8] https://www.pepperdine.edu/about/locations/malibu/.

- 5 -

experiences: "Living on campus in Malibu—required for Seaver College freshmen and sophomores—is the best way to experience all the transformational academic, social, and spiritual growth that a college lifestyle has to offer. The relationships and sense of community developed during these years are crucial to the college experience, particularly within a dynamic environment that promotes fellowship and unity through social events, mentorship programs, service projects, and other group activities."[9]

27.    Further, "[s]ince there is a significant correlation between the degree of individual student involvement in the life of the college and success in effecting student development" Pepperdine makes a "concerted effort . . . to maximize the involvement of each student in the larger life of the college."[10]

28.    To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

29.    For the Spring term 2020, Defendant assesses the following: $27,820 for tuition, approximately $7,835 for room and board, and $126 for a campus life fee. An additional fee of $1,320.99 will be assessed for student health insurance if the student is not already covered by a family plan.[11]

30.    Such charges for study are significantly higher than online only programs, including online courses that Defendant offers.

31.    Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online

---

[9] https://www.pepperdine.edu/about/locations/malibu/.
[10] https://seaver.pepperdine.edu/about/our-story/seaver-mission/.
[11] https://seaver.pepperdine.edu/admission/financialaid/undergraduate/costs/budget-costs.htm.

undergraduate programs and $1,881 per course for online graduate programs.

**B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

32.      On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

33.      By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

34.      Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

35.      By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

36.      Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

37.      As it relates to this suit, on March 4, 2020 California Governor Gavin Newsom proclaimed a State of Emergency as a result of the threat of COVID-19.[12]

38.      On March 19, 2020, Governor Newsom issued via Executive Order N-33-20, a stay-at-home order to protect the health and well-being of all Californians.[13]

---

[12] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

[13] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.

- 7 -

39.     On the same date, the Los Angeles County Health Officer, Muntu Davis, M.D., MPH, issued a Safer At Home Public Order requiring Los Angeles County residents to isolate themselves in their residences with exceptions for essential activities.[14] The order was later extended on April 10, 2020 through May 15, 2020.[15]

40.     On March 11, 2020, Pepperdine President James Gash sent a message to the Pepperdine community announcing that the last day of in-person classes will be March 13, 2020. Classes would transition online beginning the week of March 16 and continue online for the remainder of the spring semester.[16] Residential students were asked to move out of on-campus housing by 3:00 p.m. on March 15, 2020.[17]

41.     On or about March 15, 2020, Pepperdine decided to close its campus, migrating all or substantially all classes online.

42.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

43.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

44.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job

---

[14] http://file.lacounty.gov/SDSInter/lac/1070029_COVID-19_SaferAtHome_HealthOfficerOrder_20200319_Signed.pdf.

[15] http://publichealth.lacounty.gov/media/Coronavirus/docs/HOO/HOO_Safer_at_Home_Order_for_Control_of_COVID_04102020.pdf.

[16] https://emergency.pepperdine.edu/page/4/.

[17] Id.

- 8 -

of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning. . . .  It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[18]

45.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[19]

46.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast

---

[18] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

[19] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

- 9 -

numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[20]

**C.     Defendant's Refusal To Issue Tuition, Fee, And/Or Room And Board Refunds**

47.     Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing as soon as possible and no later than March 15, 2020.

48.     While Defendant has agreed to prorate housing and dining, the proration was inconsistent amongst the five schools.[21]

49.     Defendant has not agreed to prorate or refund tuition or mandatory fees.

50.     Such denial of tuition and fee refunds was reported in the Pepperdine Graphic after a Virtual Town Hall hosted by Provost Rick Marrs, Vice President of Student Affairs Connie Horton, President Jim Gash, and Seaver Dean Michael Feltner.[22]

51.     Instead, Defendant announced tuition for Plaintiff's son's graduate program will increase 3.8% for the Fall 2020 term.

52.     Defendant does so notwithstanding its recognition that its "unprecedented actions that have significantly impacted the academic experience for many of our students."[23]

**V.     CLASS ACTION ALLEGATIONS**

53.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All people paying Defendant, in whole or in part, personally and/or on behalf of others, for Spring 2020 tuition, fees,

---

[20] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

[21] https://community.pepperdine.edu/housing/housingduringcovid-19.htm.

[22] http://pepperdine-graphic.com/live-updates-pepperdine-administration-holds-virtual-town-hall-about-rest-of-the-semester/.

[23] https://emergency.pepperdine.edu/page/4/.

- 10 -

> and/or room board for in-person instruction and use of
> campus facilities, but who were denied use of and/or access
> to in-person instruction and/or campus facilities by
> Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

54.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

55.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

56.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

57.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of

- 11 -

operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

58.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

a.  Whether Defendant engaged in the conduct alleged;

b.  Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.  Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.  Whether Defendant violated the common law of unjust enrichment;

e.  Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.  The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

59.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

60.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff's son is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff's son was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

61.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff

- 12 -

has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

62.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

63.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

64.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

65.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.    CAUSES OF ACTION
### COUNT I
### BREACH OF CONTRACT

66.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

67.    Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

68.    Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

69.    Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

70.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff's son's and the Class Members' ability to access university facilities, and/or has evicted Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

71.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach, including.

72.    Plaintiff and Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

### COUNT II
### UNJUST ENRICHMENT

73.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

74.    At all times relevant hereto, Plaintiff and the Class Members directly

- 14 -

conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff's son and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

75.    Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

76.    Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

77.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

78.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

79.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III
## CONVERSION

80.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

81.    Plaintiff's son and the other members of the Class have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiff's son and the Class Members obtained such rights by

- 15 -

paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

82.    Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff's son from Defendant's facilities.

83.    Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

84.    Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

85.    Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services and/or facility access.

**COUNT IV**

**CAL. BUS. & PROF. CODE § 17200**

86.    Plaintiff restates and re-alleges, and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

87.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, prohibits an "unlawful, unfair or fraudulent business act or practice."

88.    Defendant violated the Unfair Competition Law by committing an unlawful act by breaching its contracts with Plaintiff and Class Members, failing to provide services paid for, including in-person instruction and access to Defendant's facilities, and failing to refund tuition, fees, and costs.

- 16 -

89.     Defendant's practices are fraudulent because Defendant represented it would offer in-person instruction and access to Defendant's facilities. Plaintiff and Class Members paid for the Spring 2020 semester and college experience as advertised. But Plaintiff's son and Class Members did not receive the services they paid for—Defendant moved all classes online, restricted student access to university facilities, and evicted Class Members from campus housing.

90.     Defendant continues to charge full tuition and fees as if full services and facilities are being provided, collecting millions of dollars from students deprived of the full benefit of their payments.

91.     Defendant's practices are immoral, unethical, oppressive, unscrupulous or substantially injurious because it deprives Plaintiff and Class Members of their bargained for educational experience, opportunities, and access to facilities, and forces students and families to bear the burden of Pepperdine's COVID-19 related shutdown.

92.     As a direct and proximate result of Defendant's unlawful and unfair business acts and practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

93.      Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded tuition, fees, and/or room and board;

- 17 -

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

### JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

- 18 -

Dated: June 3, 2020                          Respectfully submitted,

                                             HAGENS BERMAN SOBOL SHAPIRO LLP

                                             By:  _/s/ Christoper R. Pitoun_____
                                                 Christopher R. Pitoun (SBN 290235)
                                             301 North Lake Avenue, Suite 203
                                             Pasadena, CA 91101
                                             T: (213) 330-7150
                                             F: (213) 330-7152
                                             *christopherp@hbsslaw.com*

                                             Steve W. Berman
                                             (*Pro Hac Vice* Forthcoming)
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             1301 Second Avenue, Suite 2000
                                             Seattle, WA 98101
                                             (206) 623-7292
                                             *steve@hbsslaw.com*

                                             Daniel J. Kurowski
                                             (*Pro Hac Vice* Forthcoming)
                                             Whitney K. Siehl
                                             (*Pro Hac Vice* Forthcoming)
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                             455 N. Cityfront Plaza Dr., Suite 2410
                                             Chicago, IL 60611
                                             (708) 628-4949
                                             *dank@hbsslaw.com*
                                             *whitneys@hbsslaw.com*

                                             *Attorneys for Plaintiff, individually and on
                                             behalf of all others similarly situated*

- 19 -