UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 1 of 15 |

Present: The Honorable   **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for The University(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE THE UNIVERSITY'S MOTION TO DISMISS [37]**

Plaintiff Joseph Pinzon filed this action on June 3, 2020 [Doc. # 1] and filed the operative First Amended Complaint ("FAC") on September 4, 2020 [Doc. # 15]. Pinzon, individually and on behalf of a putative class of similarly situated individuals, alleges the following claims against the University, under Class Action Fairness Act of 2005 ("CAFA") jurisdiction: (1) breach of contract; (2) breach of implied contract; (3) restitution based on quasi-contract; (4) unjust enrichment; (5) conversion; (6) money had and received; and (7) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* FAC at ¶¶ 89-153.

On September 18, 2020, the University filed a Motion to Strike ("MTS") and a Motion to Dismiss ("MTD") the FAC. [Doc. ## 36, 37.] Both motions are fully briefed. *See* MTD Opp. [Doc. # 38]; MTS Opp. [Doc. # 39]; MTS Reply [Doc. # 41]; MTD Reply [Doc. # 42]. In addition, Pinzon filed numerous notices of supplemental authority. [Doc. ## 48, 50, 52, 53, 55, 57, 59.] The University also filed notices of supplemental authority. [Doc. # 51, 54, 56, 58.]

For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the University's MTD, and **DENIES** the MTS.

**I.
FACTUAL AND PROCEDURAL BACKGROUND[1]**

Defendant Pepperdine University is a university offering undergraduate and graduate programs located in Malibu, California. FAC at ¶¶ 19, 20. In response to the COVID-19 pandemic, on March 11, 2020, the University informed its students that classes would transition

---

[1] The Court accepts all material facts alleged in the FAC as true solely for the purpose of deciding the motion to dismiss. The Court **DENIES as moot** the University's request for judicial notice because it need not and does not rely on any of the attached documents. [Doc. # 38.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 2 of 15 |

to online-only instruction starting the week of March 16, 2020 and would continue to be conducted online throughout the Spring 2020 semester. *Id.* at ¶ 3.

Pinzon, a Texas citizen and resident, is the parent of an adult graduate student at the University's Graduate School of Education and Psychology ("GSEP"). Pinzon paid for his son's tuition and fees for the Spring 2020 and Summer 2020 semesters at the GSEP. FAC at ¶ 9. According to Pinzon, his son enrolled at the University to obtain the full experience of in-person courses, interactions with faculty, and small class sizes. *Id*. at ¶ 14. As a result of the University's campus closure, Pinzon alleges that his son and other students lost the benefits of in-person instruction and other on-campus services that the University promised. *Id*. at ¶¶ 15, 53.

The University has since refused to issue prorated refunds for the tuition and mandatory fees paid for the Spring 2020 semester. *Id*. at ¶ 72. Pinzon alleges that the University's actions have financially damaged him and putative Class Members. *Id*. at ¶ 6. He defines the Class as:

> All people paying Defendant, in whole or in part, personally and/or on behalf of others, for tuition, fees, and/or room board for in-person instruction and use of campus facilities, but who were denied use of and/or access to in-person instruction and/or campus facilities by Defendant for the Spring 2020 term or any subsequent term.

*Id*. at ¶ 76. Pinzon brings this action individually and on behalf of others similarly situated seeking "disgorgement and monetary damages in the amount of prorated, unused amounts of tuition, room and board, and fees that Plaintiff and the other Class Members paid" but were not provided by the University. *Id.* at ¶ 6.

On October 20, 2020, the Court ordered the parties in the instant case and another case seeking COVID-19-related tuition refunds from the University, *Rezvani v. Pepperdine University*, CV 20-8582-DMG (KSx), to show cause why the two cases should not be consolidated. The parties filed their responses to the Order. [Doc. ## 45, 46.] On November 3, 2020, the Court issued an order holding consolidation in abeyance pending resolution of the instant MTD and MTS. [Doc. # 47.]

The University moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to lack of standing, and under Rule 12(b)(6) for failure to state his claims. The University also moved to strike from the FAC (1) statements from its website and materials directed at undergraduate students in the University's Seaver

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 3 of 15 |

College, (2) references to the University's Fall 2020 tuition increases, and (3) references to the University's endowment. The Court addresses the MTS first before turning to the MTD.

### III.
### MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014); *see also Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) ("Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. . . .'" (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004))). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Holmes*, 966 F. Supp. 2d at 930; *see also Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

The University has not shown that any of the material it seeks to strike from the FAC is impertinent or immaterial. Although the Court will not rely on allegations relating to the undergraduate Seaver College to evaluate Pinzon's claims based on tuition paid for his son's graduate courses at the GSEP, those allegations may be relevant to Pinzon's class claims. *See Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d 1092, 1107 (S.D. Cal. 2018) ("At the motion to dismiss stage, what matters is the allegations relevant to the named Plaintiffs, not the scope of an uncertified putative class. Defendants may offer objections to the scope of the putative class when Plaintiffs seek certification, if and when this case reaches that phase."). The University has not shown that the allegations relating to Seaver College have no possible bearing on this litigation, if it reaches the class certification stage. Nor has the University shown that the allegations relating to the University's tuition increases and size of its endowment are irrelevant to Pinzon's unjust enrichment and restitution claims, as the Court discusses in more detail below.

The Court therefore **DENIES** the MTS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 4 of 15 |

## IV.
## MOTION TO DISMISS

**A.     Legal Standards**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a complaint for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, the University mounts a facial attack for lack of standing.

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

**B.     Article III Standing**

Article III of the Constitution limits federal courts' subject matter jurisdiction by requiring that plaintiffs have standing to sue. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The standing analysis concerns "whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Id.* at 1122. A plaintiff establishes Article III standing by satisfying a three-part test: (1) the plaintiff "must have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
|---|---|---|---|

| Title | *Joseph Pinzon v. Pepperdine University* | Page | 5 of 15 |
|---|---|---|---|

suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of," i.e., "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1169 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief that is sought." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008)) (internal citations omitted).

The University focuses its argument only on the first element of standing, injury-in-fact. First, it argues that Pinzon fails to allege an injury-in-fact because he is a parent of a student, not a student himself, and has not suffered direct injury from the University's alleged deprivation of access to in-person instruction, resources, services, and activities. Pinzon responds that because he paid for his son's "tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term," and his son did not receive the benefits promised, he suffered economic injury. *See* MTD Opp. at 10; FAC at ¶¶ 6, 10, 51-53, 91.[2] Pinzon also alleges that he personally entered into a contract with the University. *See* FAC at ¶¶ 51, 91.

The University's argument is more appropriate under Rule 12(b)(6) for failure to state a claim than Rule 12(b)(1) lack of standing. The Article III injury inquiry requires only a showing of "personal injury"—i.e., that the plaintiff has a "personal stake" in the dispute—that is "concrete" and "particularized" as to the plaintiff, and "actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Pinzon has pled the economic injury of allegedly overpaying for tuition, and "[e]conomic injury is clearly a sufficient basis for standing." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996); *see Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing"). The Court will address under Rule 12(b)(6) the University's argument that

---

[2] Contrary to the University's arguments, Pinzon has in fact pled—albeit with scant detail—that he paid for his son's room and board as well as tuition. *See* FAC at ¶ 10; MTD at 18-19; MTD Reply at 11. The Court therefore rejects the University's argument that Pinzon lacks standing to bring an individual claim for a prorated refund of room and board, as well as for tuition and other fees. Whether Pinzon's claims are in fact representative of the claims of putative Class Members "raises the question of class certification—i.e., whether the named plaintiffs are adequate representatives of the claims of the unnamed plaintiffs—not a question of standing." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
| Title | Joseph Pinzon v. Pepperdine University | Page | 6 of 15 |

Pinzon did not enter a valid contract with the University and therefore lacks standing to sue under California law for breach of contract.[3]

Second, the University argues that Pinzon's injury is merely speculative because Pinzon does not provide any theory by which his damages—a prorated refund—could be calculated. MTD Reply at 10. Although Pinzon needs to quantify his damages in order to recover, such detail is not "necessary to establish injury at the pleading stage." *Maya*, 658 F.3d 1071. On a motion to dismiss, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Pinzon alleges that he paid fees for on-campus classes, facilities, and experiences, and seeks a refund of the value of those in-person experiences. *See* FAC at ¶¶ 50-52, 99. Although not itemized, his alleged economic injury—over payment of tuition—is concrete and particularized. *Clapper*, 568 U.S. at 409.

Pinzon has thus alleged an injury sufficient for Article III standing at this stage of the litigation. There is no dispute that his injury is both traceable to and redressable by the University. The Court therefore **DENIES** the University's MTD under Rule 12(b)(1) for lack of standing and proceeds to analyze the sufficiency of Pinzon's pleading under Rule 12(b)(6).

C. Educational Malpractice

The University argues that California's "widely accepted rule of judicial nonintervention into the academic affairs of schools" bars each of Pinzon's claims. *Paulsen v. Golden Gate*

---

[3] Some courts within the Ninth Circuit have relied on California law providing that "an entity who is not party to a contract may not sue to enforce its terms" to find no Article III standing. *See, e.g.*, *AeQuadis, Inc. v. HCL Am., Inc.*, No. CV 16-04024 NC, 2016 WL 9185291, at *2 (N.D. Cal. Nov. 23, 2016), *aff'd*, 711 F. App'x 425 (9th Cir. 2018) (citing *Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991) ("Someone who is not a party to [a] contract has no standing to enforce the contract."); Cal. Jur. 3d Contracts § 381 (2014) ("A party who is not a party or privy to a contract cannot show a wrong done to him or her for breach of any duty arising out of the contractual relation.")); *Ambers v. Wells Fargo Bank, N.A.*, No. 13-CV-03940 NC, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3, 2014). Indeed, in similar cases seeking COVID-19-related tuition refunds from universities, courts have held that a parent does not have standing to sue for breach of contract or breach of implied contract on behalf of an adult child, where the contract at issue is between the university and the adult child. *See Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1217 (M.D. Fla. 2020); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW (RAOx), 2020 WL 7350212, at *6 (C.D. Cal. Dec. 11, 2020); *Espejo v. Cornell Univ.*, No. CV 20-467 (MAD/ML), 2021 WL 810159, at *2 (N.D.N.Y. Mar. 3, 2021); *Bergeron v. Rochester Inst. of Tech.*, No. CV 20-6283 (CJS), 2020 WL 7486682, at *3 (W.D.N.Y. Dec. 18, 2020). These analyses appear to apply state law regarding what parties may enforce contracts to the Article III standing analysis. But "the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya*, 658 F.3d 1068 (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 7 of 15 |

*Univ.*, 25 Cal. 3d 803, 808 (1979) (collecting cases).  Generally, courts may only overturn a university's academic decision if it is "arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors." *Banks v. Dominican Coll.*, 35 Cal. App. 4th 1545, 1551 (1995) (citing *Paulsen*, 25 Cal. 3d at 808-09).  This educational malpractice doctrine grants flexibility to universities to make decisions with respect to "a student's qualifications for a degree." *Id.*  It does not apply, however, to bar claims based on a school's specific promises.  *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 826 (2007) ("Courts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction.").

Courts addressing similar claims for COVID-19-related tuition refunds have concluded that California's educational malpractice doctrine does not bar claims that the university breached a specific promise of in-person classes and experiences.  *See McCarthy v. Loyola Marymount Univ.*, No. CV 20-04668-SB (JEMx), 2021 WL 268242, at *2–3 (C.D. Cal. Jan. 8, 2021); *Saroya v. Univ. of the Pac.*, No. CV 20-03196-EJD, 2020 WL 7013598, at *4-5 (N.D. Cal. Nov. 27, 2020).  In addition, as the court in *McCarthy* noted, "[n]ot all decisions made by a university are pedagogical in nature," and the educational malpractice doctrine has primarily applied to bar judicial interference in school's decisions regarding individual academic performance or qualifications.  2021 WL 268242, at *3.  Because the decision to move to online learning during a deadly pandemic is not that type of decision, the educational malpractice doctrine does not apply.  *Id.*

Pinzon asserts that the University promised in-person classes and experiences and has not delivered refunds for failing to deliver on those promises.  None of his claims implicate the type of individual academic decision barred by the doctrine in *Paulsen*, *Banks*, and *Kashmiri*.  He makes only generalized complaints about the quality of education.  To the extent Pinzon discusses the difference in quality and value between in-person and online education, that discussion is limited to alleging damages from the University's alleged breach of contract or quasi-contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 8 of 15 |

**D.     Counts I and II:  Breach of Contract and Breach of Implied Contract**

It is well-established that the basic legal relationship between a student and a university is contractual in nature.  *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972).  In California, "[p]arents have no legal obligation to pay for the college education of an adult child."  *In re Marriage of Jensen*, 114 Cal. App. 4th 587, 597 (2003).  Under California law, the formation of a contract requires mutual assent, consisting of offer and acceptance.  *Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (2004) ("Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror.") (citation omitted).  Mutual assent is required for both express and implied contracts.  *See Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).  The existence of mutual assent is determined on an objective standard.  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).

Pinzon alleges that he, his son, and putative Class Members entered into identical binding contracts with the University by accepting its offer to register and pay for on-campus classes in accordance with the terms of the University's website and academic catalogs.  FAC at ¶¶ 91-92.  Pinzon's conclusory allegations do not show, however, that the University made any offer to him, as the parent of a student.  The University's website and academic catalogs describe offerings for students, not parents.  *Id.* at ¶¶ 30-47.  The GSEP 2019-2020 Academic Catalog also unambiguously states that "[t]he *student* is responsible for the repayment of any outstanding balance of his or her student account," as well as for course registration.  FAC, Ex. A at 35 (emphasis added).  The GSEP catalog contains no reference to any responsibilities or obligations held by parents or third parties who provide funding for a student's tuition, except that a student may grant a parent, spouse, or other third party "Guest Access" to make a payment on a student's account.  *Id.*  Therefore, even if the GSEP catalog makes an "offer" of in-person classes, Pinzon points to no language or circumstances indicating that the University intended to make an offer to contract with him or any parent of a student, as opposed to an offer to contract with the student directly.  Furthermore, Pinzon has not alleged that his son granted him "Guest Access" to his student account or that he has undertaken any legal obligations with the University on behalf of his son, such as signing any admissions or financial documents.  Whatever financial arrangement Pinzon may have with his son does not establish a contractual relationship between him and the University.[4]

---

[4] *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1 (1972), does not stand for a contrary proposition.  The California Court of Appeal stated that "[i]t has been held that a minimal departure from a projected course of study does *not* entitle the student (or his parent who paid for it) to recover the tuition paid or any part of it."  *Id.* at 11 (emphasis added).  The quoted parenthetical does not establish that any time a parent pays for any portion of an adult child's tuition, he has a claim for breach of his child's contract for education.

Case 2:20-cv-04928-DMG-KS   Document 63   Filed 08/05/21   Page 9 of 15   Page ID #:1985

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 9 of 15 |

Indeed, the FAC concedes his awareness that the University's course catalogs and website constitute "material terms of the bargain and contractual relationship *between the students and the University*." FAC at ¶ 92 (emphasis added). His briefing betrays his muddled position by stating that "Plaintiff and class members applied for and were offered positions as students at Pepperdine[, a]nd Plaintiff and class members accepted the University's offer, paying Pepperdine's hefty tuition, room and board, and other fees for the in-person and on-campus experience." MTD Opp. at 20; *see also id.* at 20-21 ("The University *and the students* had an enforceable contract whereby *the students* would pay for, and the University would provide, in-person instruction and services . . . . *Plaintiff* and class members have been damaged by having to pay for educational services they did not receive.") (emphasis added). It is his son, and not Pinzon himself, who applied for a position at the University and accepted any offers the University made in exchange for tuition. Thus, without ruling on whether Pinzon's son entered into a contract with the University, the Court concludes that Pinzon did not himself allege an express or implied contract with the University.

Accordingly, Pinzon does not state a breach of contract claim on his own behalf. In addition, he lacks standing to sue for any contract entered into between his son and the University. *See Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991); Cal. Jur. 3d Contracts § 381 (2014) ("A party who is not a party or privy to a contract cannot show a wrong done to him or her for breach of any duty arising out of the contractual relation.").

The Court therefore **DISMISSES** Pinzon's claims for breach of contract and breach of implied contract, with leave to amend.

E.      **Counts III and IV: Restitution Based on Quasi-Contract and Unjust Enrichment**

Pinzon asserts both a restitution based on quasi-contract claim and an unjust enrichment claim. The University argues that his unjust enrichment claim must fail because unjust enrichment is not an independent cause of action under California law. MTD at 11-12, n.17.[5] California appellate courts are not of one mind as to whether unjust enrichment is a separate cause of action. *Compare Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726-28 (2000)

---

[5] The University also argues that Pinzon cannot plead a restitution or unjust enrichment claim where a binding, enforceable contract exists defining the rights of the parties. MTD Opp. at 26. As discussed above, Pinzon has not adequately pled the existence of such a contract between him and the University. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012). In any event, quasi-contract claims may be pled in the alternative to contract claims. *See* Fed. R. Civ. P. 8(d); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("we allow pleadings in the alternative—even if the alternatives are mutually exclusive.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
|---|---|---|---|
| Title | ***Joseph Pinzon v. Pepperdine University*** | Page | 10 of 15 |

(affirming judgment for plaintiff on unjust enrichment claim), *with McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." (internal quotation marks omitted)). The Ninth Circuit has held, however, that "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action. It is just a restitution claim.") (citation and internal quotation marks omitted). Because unjust enrichment is not a standalone claim and Pinzon already asserts a claim for restitution based on quasi-contract, the Court **DISMISSES** the duplicative unjust enrichment claim, without leave to amend.

Quasi-contract claims require the plaintiff to show "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)). Unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at 762 (internal quotations omitted). Typically, a quasi-contract action seeks the return of the benefit unjustly retained by the defendant. *Id.* (citing 55 Cal. Jur. 3d Restitution § 2). "Determining whether it is unjust for a person to retain a benefit may involve policy considerations." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992).

Pinzon alleges that it is unjust for the University to retain his son's and other putative Class Members' tuition intended to pay for on-campus classes, facilities, and services when the University did not provide those experiences. FAC at ¶ 131. Pinzon points to the following facts that support his reasonable expectation that his son would attend the University's GSEP in person: the GSEP clearly distinguishes between its on-campus graduate degree program and its 100 percent online programs, and its 2019-2020 Catalog describes students' access to specific on-campus facilities including "three on-campus counseling clinics." *Id.* at ¶¶ 30-35. The University itself acknowledges that its "unprecedented actions . . . have significantly impacted the academic experience for many of [its] students." FAC at ¶ 75. According to Pinzon, the transition to online learning has resulted in "an enormous windfall" to the University that burdens tuition-paying students and their families. *Id.* at ¶ 5. He alleges that the University is supported by an $887.46 million endowment and assets totaling more than $1.962 billion and cannot in good conscience retain tuition payments from individuals with fewer financial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 11 of 15 |

resources and who may have incurred debt to finance an in-person college education. *Id.* at ¶¶ 125-26.

Taking as true Pinzon's factual assertions for the purposes of this motion, the Court joins the numerous other courts that have found restitution or unjust enrichment claims adequately pled based on similar allegations. *See McCarthy*, 2021 WL 268242, at *6; *Nguyen v. Stephens Inst.*, No. CV 20-04195-JSW, 2021 WL 1186341, at *5 (N.D. Cal. Mar. 30, 2021); *Little v. Grand Canyon Univ.*, No. CV 20-00795-PHX (SMBx), 2021 WL 308940, at *5 (D. Ariz. Jan. 29, 2021); *In re Bos. Univ. COVID-19 Refund Litig.*, No. CV 20-10827-RGS, 2021 WL 66443, at *3 (D. Mass. Jan. 7, 2021); *Ford v. Rensselaer Polytechnic Inst.*, No. CV 20-470, 2020 WL 7389155, at *9 (N.D.N.Y. Dec. 16, 2020). The motion to dismiss Pinzon's claim for quasi-contract restitution/unjust enrichment is **DENIED**.

**F.      Counts V and VI:  Conversion and Money Had and Received**

California courts see conversion as "the wrongful exercise of dominion over the personal property of another." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007). An essential element of a conversion claim is "a specific sum capable of identification." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 452 (1997). A specific and identified amount of money can form the basis of a conversion claim, but when the money is not identified and not specific, "the action is to be considered as one upon contract or for debt and not for conversion." *Baxter v. King*, 81 Cal. App. 192, 194 (1927).

Pinzon fails to identify a specific sum that may form the basis of a claim for conversion. His contention that the University unlawfully converted $27,820, or the full cost of tuition per semester, contradicts his allegation that he seeks a prorated refund of a portion of the tuition paid for the Spring 2020 semester. *Compare* Opp. at 29 *with* FAC at ¶¶ 133, 138. Because Pinzon does not identify the specific amount of money converted, the Court **DISMISSES** the conversion claim, with leave to amend. *See Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 216 (2014) ("A plaintiff must specifically identify the amount of money *converted*, not that a specific, identifiable amount of money has been entrusted to the defendant.") (emphasis added).

A claim for money had and received also requires a "statement of indebtedness in a certain sum." *Farmers Ins. Exchange*, 53 Cal. App. 4th at 460. Moreover, a common count for money had and received, if stated as an alternative way of seeking the same recovery demanded in a specific claim, only survives if the underlying claim also survives. *Id.* Here, Pinzon bases his claim for money had and received on the same facts as his conversion claim. *See* FAC at ¶¶ 141-43. Like in his conversion claim, Plaintiff seeks a prorated tuition refund for the Spring

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (KSx)** | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 12 of 15 |

2020 semester through his claim for money had and received, without specifying the sum. *Id.* at ¶ 144.

Because Plaintiff failed to state a claim for conversion and does not allege the sum of the debt, the Court also **DISMISSES** the common count for money had and received, with leave to amend.

### G. Count VII: UCL

The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Pinzon argues that the University violates each of the UCL's three prongs. FAC at ¶¶ 148-51; *see Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Before examining each prong, the Court first analyzes whether Pinzon has standing to bring a UCL claim.

#### 1. Standing and Choice of Law

Pinzon has standing to sue under the UCL because he alleges an economic injury that occurred in California. *See Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1134 (N.D. Cal. 2014). The University argues that because Pinzon is a Texas resident, he cannot bring an unfair competition claim under California law. MTD at 32-33. It cites to *Van Mourik v. Big Heart Pet Brands, Inc.*, No. CV 17-03889-JD, 2018 WL 1116715 (N.D. Cal. Mar. 1, 2018), which analyzed whether a Texas resident's claims of false advertising arising out of his purchase of dog food in Texas from a California-based company arose under California or Texas consumer protection statutes. After engaging in California's three-step choice-of-law inquiry, the court in *Van Mourik* concluded that Texas consumer protection law applied.

This case is distinguishable from *Van Mourik*. For one, the injury—University's alleged refusal to provide a prorated tuition refund—took place in California, and "the UCL reaches any unlawful business act or practice committed in California." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011). The Court is unpersuaded by the University's argument that the injury took place in Texas merely because Pinzon saw the University's website and course catalog while in Texas. For another, the University does not meet its burden under California's choice-of-law analysis requiring "the proponent of the foreign law to (1) identify material differences between foreign law and California law, and (2) establish that the foreign state is interested in having its own law apply." *Van Mourik*, 2018 WL 1116715, at *2; *see also Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (Cal. 2001). The University does not describe how Texas

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 13 of 15 |

consumer protection law differs and why it should apply. The Court therefore sees no barrier to Pinzon bringing a UCL claim arising out of the University's conduct in California.

### 2. Unlawful

A cause of action brought under the "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). The pleading must allege the way in which the alleged practices violated the "borrowed" law by "stat[ing] with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 618–19 (1993). Pinzon does not point to any statute, regulation, or other law that the University violated, and "a common law violation such as breach of contract is insufficient." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Pinzon therefore fails to state a UCL claim under the unlawful prong.

### 3. Fraudulent

A business practice is "fraudulent" if "members of the public are likely to be deceived." *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983). If a plaintiff has alleged a "unified course of fraudulent conduct," then Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies to that plaintiff's UCL claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Here, Pinzon alleges that the University fraudulently "represented it would offer in-person instruction and access to Defendant's facilities." FAC at ¶ 149.

Pinzon has not alleged that any of the University's statements on its website or the GSEP catalog were fraudulent at the time they were made. California courts are unwilling to impose liability under the fraudulent prong of the UCL where a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made such statements. *See Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 970 (1997) (finding the "unwitting" and "unintentional" distribution of contaminated dog food did not constitute a deceptive practice under the UCL's fraudulent prong); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011) (dismissing plaintiff's UCL claim under the fraudulent prong because the defendant had no knowledge, or reason to know, of an alleged product defect).

Given the unprecedented circumstances caused by the COVID-19 pandemic, the University, along with every other institution of higher learning around the country that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 14 of 15 |

transitioned to online learning, could not possibly have known at the beginning of the Spring 2020 semester that it would order students to remain off-campus for much of the semester. The statements thus cannot be considered deceptive or misleading at the time they were made. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011). For failure to allege actionable fraud, Pinzon's UCL claim under the fraudulent prong must be dismissed.

    **4.**    **Unfair**

The UCL also creates a claim for a business practice that is "unfair" even if not specifically prohibited by another law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). An "unfair" business practice "is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (citation and quotation marks omitted). To state a claim under the unfair prong, a plaintiff must allege facts showing that the consumer injury is substantial, not outweighed by any countervailing consumer benefits, and could not have been reasonably avoided. *In re Sony Grant Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).

For the reasons that Pinzon adequately alleges a quasi-contract claim for restitution, he has stated a claim that the University's refusal to refund prorated tuition for the lack of in-person classes and services is unfair under the UCL. Taking his factual allegations as true, the Court cannot decide, as a matter of law, that the University's actions are not substantially injurious to consumers.

Because a UCL claim under the unfair prong may proceed, the University's motion to dismiss the UCL claim is **DENIED**.

**V.**
**CONCLUSION**

In light of the foregoing, the Court **DENIES** the University's MTS in its entirety and **GRANTS in part** and **DENIES in part** its MTD as follows:

1. Pinzon's claims for breach of contract, breach of implied contract, conversion, and money had and received are **DISMISSED**, with leave to amend.
2. Pinzon's claim for unjust enrichment is **DISMISSED**, without leave to amend.
3. Pinzon's claims under the UCL, except for the claim for quasi-contract restitution under the unfair prong of the UCL, are **DISMISSED**, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (KSx) | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Joseph Pinzon v. Pepperdine University* | Page | 15 of 15 |

Because this action and *Rezvani v. Pepperdine University*, CV 20-8582-DMG (KSx), raise common questions of law and fact and the parties do not oppose consolidation, the Court **ORDERS** that these actions and any later-filed tuition refund actions against the University shall be consolidated under the caption *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation*, Case No. 20-4928-DMG (KSx). *See* Fed. R. Civ. P. 42(a). Any material documents filed in Case No. 20-8582 are deemed to be filed in Case No. 20-4928. Case No. 20-8582 shall be administratively closed.

The parties shall meet and confer regarding schedules for (1) filing and responding to a Consolidated Class Complaint and (2) stipulating to or briefing the issue of appointment of interim Class Counsel. The parties will file a joint status report setting forth those proposed schedules within **21 days** of the date of this Order.

**IT IS SO ORDERED**.