UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (JCx)** | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **1** of **10** |

Present: The Honorable   DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION FOR RECONSIDERATION [168] [180] [181]**

**I.
FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiffs Joseph Pinzon, Jr. and Mathew Rezvani were students at Defendant Pepperdine University and enrolled in classes during the Spring 2020 semester. Defendant's Statement of Undisputed Facts ISO MSJ ("SUF") ¶¶ 1–2 [Doc. # 89]. During that semester, in March 2020, the COVID-19 pandemic and related local and statewide declarations of states of emergency caused Pepperdine to transition to an online-only format. *Id.* ¶¶ 28–31. Both students completed their classes during Spring 2020, but they also felt that certain elements of their student experiences were lacking because of the transition to online-only learning. *Id.* ¶¶ 22–25. For example, they did not get to enjoy Pepperdine's beautiful Malibu campus, and they missed face-to-face interactions with their professors and fellow students. Plaintiffs' SUF ISO Opp. to MSJ ("PSUF") ¶¶ 20–24 [Doc. # 89].

Pinzon and Rezvani, seeking a partial refund of their Spring 2020 tuition, filed the operative consolidated complaint on behalf of themselves and a proposed class on September 16, 2021, asserting claims for (1) breach of express contract, (2) breach of implied contract, (3) restitution based on quasi-contract, and (4) unfair business practices in violation of California's Unfair Competition Law ("UCL"). [Doc. # 66.] On January 6, 2023, Pepperdine moved for summary judgment on all of Plaintiffs' claims. [Doc. # 79 ("MSJ").] The Court granted in part and denied in part Pepperdine's MSJ: (1) granting the MSJ as to Plaintiffs' express contract claim, (2) granting the MSJ as to Plaintiffs' implied contract claim based on Pepperdine's impossibility

---

[1] The Court detailed the factual and procedural background of this case in its Order re Defendant's Motion for Summary Judgment ("MSJ"). [Doc. # 92 ("MSJ Ord.").] The Court incorporates by reference the background summary included in that Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (JCx)** | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **2** of **10** |

defense, (3) denying the MSJ as to Plaintiffs' quasi-contract claim, and (4) denying the MSJ as to Plaintiffs' UCL claim, but granting the MSJ as to Plaintiffs' entitlement to injunctive relief. [Doc. # 92 ("MSJ Ord.").] The Court certified a class as to Plaintiffs' remaining claims on September 26, 2023. [Doc. # 115.]

On February 29, 2024, the California Court of Appeal published a decision in a facially similar case concerning students at the University of San Francisco ("USF"). *See Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75 (2024). Pepperdine, arguing that the *Berlanga* decision is binding on this Court and requires reversal of the MSJ Order, filed a motion for reconsideration of the Court's MSJ Order. [Doc. # 168 ("MFR").] The motion is fully briefed. [Doc. ## 172 ("Opp."), 173 ("Reply").] The Court **DENIES** the MFR because *Berlanga* is factually distinguishable and overstates the "specificity" required for an implied contract to exist.

## II.
## LEGAL STANDARD

### A.   Rule 60(b) and Local Rule 7-18

Federal Rule of Civil Procedure 60(b) provides in pertinent part that a court may relieve a party from an order or judgment for: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Rule 60(b)(6) is Rule 60(b)'s "catch-all" provision which "applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007) (citing *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 n.8 (9th Cir.2002)).

Motions for reconsideration are not "vehicle[s] to reargue the motion or to present evidence which should have been raised before." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (internal citation and quotation marks omitted); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (same). "Motions for reconsideration are disfavored" and rarely granted "absent highly unusual circumstances." *See In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155, 1163 (N.D. Cal. 2019). The Court exercises its discretion in deciding whether reconsideration is warranted. *Daghlian v. DeVry Univ., Inc.*, 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007).

Under Local Rule 7-18, a party may seek reconsideration "only on the grounds of (a) a material difference in fact or law from that presented to the court before the decision that in the exercise of reasonable diligence could not have been known to the party moving for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (JCx) | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | 3 of 10 |

reconsideration at the time of the decision, or (b) the emergence of new material facts or a change of law occurring after the time of the decision, or (c) a manifest showing of a failure to consider material facts presented to the court before the decision." C.D. Cal. L.R. 7-18. "No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

## III.
## DISCUSSION

Pepperdine asks the Court to reconsider its summary judgment order in light of the California Court of Appeal's decision in *Berlanga v. University of San Francisco*. *See* 100 Cal. App. 5th 75 (2024). Specifically, Pepperdine asserts that *Berlanga* requires the Court to revisit its order and apply the following principles to its summary judgment analysis:

1. Plaintiffs' subjective expectations and motivations for applying to Pepperdine are not relevant to objectively interpreting the statements in Pepperdine's publications as a matter of law;
2. Descriptions of the beauty of Pepperdine's campus, its facilities, and views are not, as a matter of law, unequivocal statements that students would receive exclusively in-person instruction including during a pandemic;
3. The designation of classroom locations in a course search are not, as a matter of law, unequivocal statements that students would receive exclusively in-person instruction during a pandemic; [and]
4. The law school catalog which included 'in-person field placements and site visits' was not, as a matter of law, unequivocal statements that students would receive exclusively in-person instruction including during a pandemic.

MFR at 14–15.[2]

Although Pepperdine's formulation of the second through fourth stated principles quoted above includes the faulty straw man presupposition that the school made representations that it would engage in in-person instruction "including during a pandemic," the Court addresses these arguments within the proper framework, i.e., whether there were enforceable promises that formed the basis for the parties' bargain. Obviously, this case does not involve any promises that instruction would occur in-person during a pandemic.

---

[2] Page citations herein refer to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (JCx)** | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **4** of **10** |

A.  **This Court's Summary Judgment Decision**

On March 7, 2023, the Court granted in part and denied in part Pepperdine's motion for summary judgment. The Court granted Pepperdine's MSJ as to Plaintiffs' express and implied contract claims and denied the MSJ as to Plaintiffs' quasi-contract and UCL claims. MSJ Ord. at 15.

In reaching these conclusions, the Court considered the fact that Pepperdine offered separate online-only and in-person degree programs, emphasized its campus's beauty and on-campus offerings, highlighted its in-person field placements and site visits, and offered access to various on-campus activities and facilities. *Id.* at 3–4. From this, the Court found that "a reasonable jury could conclude that, based on Pepperdine's representations on its website and in its Academic Catalogs, the mutual intent of the parties was to contract for in-person classes." *Id.* at 12. Nonetheless, because the various COVID-19 stay-at-home orders precluded Pepperdine from continuing on-campus classes for the remainder of the Spring 2020 semester, the Court concluded that Pepperdine was entitled to an impossibility defense and granted summary judgment on Plaintiffs' implied contract claim. *Id.* at 13.

Based on the same reasons as described in its implied contract analysis, the Court concluded that triable issues of fact existed regarding Plaintiffs' quasi-contract claim. *Id.* at 14. Because "a trier of fact could reasonably find that the existence of a promise to provide in-person classes and activities that were not in fact provided would render [Pepperdine's] retention of [Plaintiffs' tuition for a full semester] unjust[,]" Plaintiffs' quasi-contract and UCL claims both survived. *Id.* at 13–15.

B.  ***Berlanga v. University of San Francisco***

1.  **Implied Contract**

On February 29, 2024, the California Court of Appeals affirmed the trial court's grant of summary judgment in favor of the University of San Francisco in a case based ostensibly on similar facts. *See Berlanga*, 100 Cal. App. 5th at 90. As here, the plaintiff students alleged that USF breached its promise to provide in-person classes and should be required to refund a portion of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (JCx)** | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **5** of **10** |

their tuition payments for the Spring 2020 semester.³  *Id.* at 78.  The students brought claims for breach of contract (express and implied), violation of the UCL, quasi-contract, and promissory estoppel.  *Id.* at 79.  The trial court granted USF's motion as to all claims except the UCL claim, but the plaintiffs voluntarily dismissed the UCL claim prior to the appeal.  *Id.* at 81.

Although the court in *Berlanga* "recognize[d] that all parties expected classes to be conducted in-person," it nonetheless found that "those general expectations [did] not amount to an enforceable term of the parties' contract."  *Id.* at 86.  Essentially, there was no dispute that there was a contract between the students and the university, but the court held that the contract did not include an enforceable promise to provide "exclusively in-person instruction under the circumstances of a global health and safety emergency."  *Id.* at 84.  The court distinguished its case from *Kashmiri v. Regents of University of California*, where the students had relied on three specific university publications "unequivocal[ly]" promising not to raise certain fees for returning students.  *Id.* at 83–84; *see* 156 Cal. App. 4th 809 (2007).  The *Berlanga* court reasoned that the absence of "unequivocal" statements regarding in-person instruction and lack of "specific terms under which the universities were offering in-person instruction" made the plaintiffs' expectation of exclusively in-person instruction unreasonable.  *Berlanga*, 100 Cal. App. 5th at 86.

In arriving at its decision about the plaintiffs' implied contract claim, the *Berlanga* court referenced this Court's MSJ decision and found the decision "flawed to the extent that [it] rel[ied] on generalized statements regarding campus experiences or facilities."  *Id.* at 85.  The court stated that California law on implied contracts requires the delineation of "specific terms" to bind the parties.  *Id.*

2.      **Quasi-Contract**

The *Berlanga* court also determined that the plaintiffs were precluded from pursuing their quasi-contract claim because "there was a contract between student appellants and USF regarding their enrollment" and "a cause of action for quasi-contract 'cannot lie where there exists between the parties a valid express contract covering the same subject matter.'"  *Id.* at 89 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).  In its reasoning, the court noted that the contract between the parties was neither unenforceable nor invalid but did not address whether the quasi-contract claim would have survived if that were not the case.  *Id.*

---

³ The USF students sought partial refunds for the Fall 2020 and Spring 2021 semesters as well.  *Berlanga*, 100 Cal. App. 5th at 87–88.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (JCx) | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | 6 of 10 |

### C.  Implied in Fact Contracts under California Law

The Court does not find that the *Berlanga* decision warrants reconsideration of this Court's MSJ decision.  First, even though *Berlanga* is similar to this case in some respects, it is easily distinguishable in other, more meaningful, ways.  Second, even in light of *Berlanga*, the Court does not find its MSJ decision to be contrary to California law.

### 1.  Specific Statements

An important difference between this case and *Berlanga* is that the trial court in *Berlanga* focused its analysis on the USF admissions letter as the basis for the alleged breach of implied contract.  *Berlanga v. Univ. of San Francisco*, No. CGC-20-584829, 2022 WL 22760836, at *6 (Cal. Super. July 19, 2022) (explaining that the plaintiffs "explicitly alleged" that the admissions letter was the basis for the contract with USF); *see* 100 Cal. App. 5th at 87 ("[T]he [trial] court properly focused on the admissions letter because that document formed the basis for appellants' breach of contract allegations").  The USF students presented other documents—such as their courses' syllabi, schedules of classes, and course catalogs—in response to one of USF's interrogatories, but they only referenced the admissions letter in their complaint.  *Id.* at 87; *see Laabs v. City of Victorville*, 163 Cal. App. 4th 1242, 1258 (2008) ("The complaint limits the issues to be addressed at the motion for summary judgment.").  Further, even considering the additional documents, any alleged influence they had on the plaintiffs' decisions to enroll at USF was limited by the fact that it was undisputed that the plaintiffs did not see those documents until *after* they had already enrolled.  *See Berlanga*, 2022 WL 22760836, at *7.  Accordingly, the statements considered by both the trial and appellate courts in *Berlanga* were much more limited—both in scope and in the impact they might have had on the plaintiffs' decisions—than the conduct and statements considered here.

In contrast, the statements upon which Plaintiffs in this case relied were more specific than those relied upon in *Berlanga*.  The USF students relied solely on the following statements:  (1) "As a member of the USF community, you will join a dynamic student body that represents a diversity of cultures, interests, thoughts, and experiences"; (2) "You will be challenged intellectually and encouraged to put thought into action, an important tenet of the nearly 500 years of Jesuit educational tradition that underpins and guides USF"; (3) "You will develop amazing friendships and expand your horizons, and you will be surrounded by the best city ever"; (4) "Please join us at one of our admitted student visit days . . . to meet your future classmates and experience the richness of our university"; and (5) "The [USF] family of faculty, students, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (JCx) | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **7** of **10** |

staff welcomes you, and I personally look forward to greeting you on campus." *Berlanga*, 100 Cal. App 5th at 80.

Here, despite Pepperdine's contentions otherwise, its statements were not as generalized as those made by USF. Notably, the first two statements cited by the USF students do not mention anything about the campus or anything unique to the in-person educational experience, and the last two statements concern the students' potential experiences at USF's "admitted student visit days," *not* their experiences during an actual semester of instruction. Thus, the third statement is the only one of the five that highlights the in-person student experience at USF. Pepperdine compares this statement to its own statements about the "beautiful" Malibu campus, but Pepperdine's statement was specifically about its campus, while USF's statement was generally about the City of San Francisco. *See* Reply at 10. Further, Pepperdine made far more than a single statement highlighting the beauty of its campus in its representations to students. *See, e.g.*, PSUF ¶ 5 ("[T]he Pepperdine University 830-acre campus has been ranked the most beautiful campus in the nation"), PSUF ¶ 6 (the law school "boasts a 40,000 square-foot law library with ocean views"), PSUF ¶ 7 (students can "walk to class with an inspiring ocean view spread out before you"). Even if Pepperdine's many statements about the beauty of its campus were directly comparable to USF's single statement about San Francisco being "the best city ever," Plaintiffs cited many other statements about different aspects of the in-person experience at Pepperdine as well. *See, e.g.*, PSUF ¶ 9 (emphasizing that Pepperdine has "1,000+ on-campus events each semester"), PSUF ¶ 25 (describing the campus's recreational facilities), PSUF ¶ 28 (describing on-campus "courses, performances, and exhibits" as sources of "cultural nourishment" for students).

Although the Court finds that Pepperdine's representations were more than just "generalized statements regarding campus experiences or facilities," the Court also respectfully notes that the *Berlanga* decision seems to overstate the degree of specificity required to find that an implied contract exists. The panel in *Berlanga* relied on two California Court of Appeal decisions for the proposition that statements must "delineate [] specific terms" to form an implied contract: *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) and *Ladas v. California State Automotive Association*, 19 Cal. App. 4th 761, 765 (1993). *Berlanga*, 100 Cal. App. 5th at 86.

First, *Weddington* is distinguishable from both *Berlanga* and this case because *Weddington* addressed whether the parties' mutual "acceptance of a proposal" resulted in the formation of a contract. *See Weddington*, 60 Cal. App. 4th at 811. The "contract" in question was a one-page memo in which the parties agreed to settle but failed to agree upon *any* material terms—essentially, it was no more than an agreement to agree. *See id.* at 799–800. Here, both this Court and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (JCx) | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **8** of **10** |

*Berlanga* court would likely agree that: (1) there was a contract between the students and their respective schools and (2) there was at least a "general expectation" that classes would be conducted in-person. *See Berlanga*, 100 Cal. App. 5th at 86, 89. Any disagreement arises only regarding whether the circumstances that created that "general expectation" could have amounted to an implied term of the contracts. As such, *Weddington* arose from an entirely different scenario and is inapposite here.

Second, *Ladas* presents an example of a promise that was too vague and indefinite to give rise to a contract. *See Ladas*, 19 Cal. App. 4th at 770. In *Ladas*, an employer allegedly promised to "consider" parity with industry standards in determining commission rates for its employees. *Id.* The *Ladas* court reasoned that the fact that a judge or jury enforcing this "amorphous promise" would have "no rational method for determining breach or computing damages" was evidence that the promise was too vague to give rise to a contractual duty. *Id.* at 771. The same problem does not exist here. Unlike in *Ladas*, where it would have been virtually impossible for the trier of fact to determine whether the employer had met its obligation to "consider" parity, here, if a jury did find that there was a promise to provide in-person education, then it would be clear that Pepperdine had breached that promise, and restitution would be the based upon what a jury found to be an equitable discount in tuition for a solely online educational experience.

The Court does not find that either *Weddington* or *Ladas*, as relied upon in *Berlanga*, contradicts its conclusion that, based on Pepperdine's prior conduct and its representations on its website and in its Academic Catalogs, a factual dispute exists regarding whether the parties intended to contract for an in-person education. *See* MSJ Ord. at 12.

To the extent that the *Berlanga* decision suggests that Pepperdine's alleged promise lacked specificity, that is precisely what distinguishes implied contracts from express contracts. In other words, if the recruitment representations contained in Pepperdine's brochures, website, and catalogs were more specific, they would be express contracts. Here, a jury could reasonably find that Pepperdine's pre-pandemic offer of a separate online instruction alternative (plus its cap on maximum online units for some programs) (PSUF ¶¶ 26, 27), requirement that new students live on campus (PSUF ¶ 31), promotion of the access its students have to "real-world, hands-on experience" through field placements (PSUF ¶ 22), and enticements of in-person on-campus enrichment through its recruitment materials (*supra* Part III.C.1) were evidence of an implied contract for in-person education and sufficiently tangible to make it inequitable for Pepperdine to retain tuition that students paid for a very different learning experience. *See, e.g.*, *Marvin v. Marvin*, 18 Cal. 3d 660, 678 n.16 (1976) ("'Contracts may be express or implied . . . If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-4928-DMG (JCx) | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | **9** of **10** |

an express one. But **if such agreement can only be shown by the acts and conduct of the parties**, interpreted in the light of the subject-matter and of the surrounding circumstances, then the contract is an implied one.'") (quoting *Skelly v. Bristol Sav. Bank*, 63 Conn. 83 (1893)); *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953) ("The only distinction between an implied-in-fact contract and an express contract is that, in the former, **the promise is not expressed in words** but is implied from the promisor's conduct."); *see also Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) ("The existence and terms of an implied contract are manifested by conduct. (Civ. Code, § 1621) . . . a contract implied in fact consists of obligations arising from a mutual agreement and intent to promise **where the agreement and promise have not been expressed in words**.") (emphasis added); *Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454, 465 (1995) **(**finding "good cause" to be a sufficiently definite and enforceable term of an implied contract); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 678 n.21 (1988) ("Just as assent may be manifested by words or other conduct, sometimes including silence, so **intention to make a promise may be manifested in language or by implication from other circumstances** . . . .") (quoting Restatement (Second) of Contracts § 4, cmt. a (1981)) (emphasis added).

The *Berlanga* court is correct that neither the contract between Plaintiffs and Pepperdine nor the contract between the USF students and USF, express or implied, included a promise to provide "exclusively in-person instruction under the circumstances of a global health and safety emergency." *Berlanga*, 100 Cal. App. 5th at 84. But this should come as no surprise, as the motivation behind the impossibility defense is that parties cannot be expected to contract around the unforeseeable. Although the impossibility defense was dispositive of Plaintiffs' implied contract claim in *Pepperdine*, it went unmentioned in *Berlanga*. *See* MSJ Ord. at 13.

2. **Impossibility**

The *Berlanga* court opined, and this Court agrees, that "[i]nterpreting general statements about campus life as binding contracts for in-person instruction or access to campus facilities without exception **places universities in an impossible situation**—violating state and/or local stay-at-home orders or breaching their contracts with students." *See id.* at 86 (emphasis added). California law is clear that when performance of a contract is prevented "by the operation of law," performance is excused. *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 772 (9th Cir. 1986) (citing Cal. Civ. Code § 1511); *see also In re Toyota Moto Corp.*, 790 F. Supp. 2d 1152, 1175 (C.D. Cal. 2011) ("California law has long recognized that impossibility of performance will excuse a party's performance under a contract.") (citing *Mineral Park Land Co. v. Howard*, 172 Cal. 289, 291 (1916)). It was on this basis that the Court ultimately granted Pepperdine's MSJ as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4928-DMG (JCx)** | Date | March 31, 2025 |
|---|---|---|---|
| Title | *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* | Page | 10 of 10 |

to Plaintiffs' claim for breach of implied contract, and the Court sees no reason to reconsider that decision now.

### 3. Quasi-Contract & UCL Claims

Lastly, unlike here, the USF students were precluded from pursuing their quasi-contract claim because the *Berlanga* court did not find that performance of an otherwise valid contract had been rendered impossible. *See Berlanga*, 100 Cal. App. 5th at 89. In contrast, Pepperdine mounted a successful impossibility defense in this case, rendering the implied contract unenforceable. This in turn allowed Plaintiffs to pursue their quasi-contract claim for equitable restitution. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (explaining that restitution based on quasi-contract may be awarded when the parties had a contract, but it "is unenforceable or ineffective for some reason"). For all the reasons stated *supra*, the *Berlanga* decision does not warrant any modification to this Court's decision on Plaintiffs' quasi-contract and UCL claims.

## IV.
## CONCLUSION

In light of the foregoing, Pepperdine's Motion for Reconsideration is **DENIED**. By no later than April 28, 2025, the parties shall meet and confer and file a Joint Status Report proposing new pretrial and trial dates and deadlines. The parties' joint requests for a ruling pursuant to Local Rule 83-9 are **DENIED as moot**. [Doc. ## 180, 181.]

**IT IS SO ORDERED.**